880 So.2d 804 (2004)
Sami M. OSTA, Appellant,
v.
STATE of Florida, Appellee.
No. 5D03-2342.
District Court of Appeal of Florida, Fifth District.
August 13, 2004.
*805 David R. Damore of Damore and Rawlins, Daytona Beach, for Appellant.
Charles J. Crist, Jr., Attorney General, Tallahassee, and Judy Taylor Rush, Assistant Attorney General, Daytona Beach, for Appellee.
PALMER, J.
Sami M. Osta appeals the trial court's order adjudicating him guilty of violating his probation, revoking his probation, and sentencing him accordingly. Concluding that the State proved by a preponderance of the evidence that Osta willfully violated substantial conditions of his probation, we affirm.
In 1997, Osta entered a plea of nolo contendere to the crimes of failing to remit state taxes and grand theft in the third degree. He was sentenced to a term of five years of probation with his adjudication of guilt withheld. Additionally, he was ordered to pay restitution in the amount of $62,529.96 to Florida's Department of Revenue.
In 2000, Osta was charged with violating his probation by failing to pay restitution, in that he was delinquent on his payment plan in the amount of $24,000.00, and had an outstanding balance in excess of $58,000.00. The narrative of the violation alleged that Osta had made sporadic payments towards his court ordered restitution in amounts ranging from $25.00 to $400.00, with two periods of time where he made no payments for two months in a row.
At the violation of probation hearing held in June 2003, Osta's probation officer testified as to the outstanding restitution balance, to the fact that Osta claimed to have been self-employed at a restaurant for most of his probation period, and that during his probationary period Osta had been issued several permits by the trial court allowing him to travel out of state for business purposes. In addition, the probation officer testified that Osta had signed an offender financial agreement in 2001 agreeing to pay $1,482.90 per month, but that Osta had never made any payments in that amount. He further stated that Osta never made a payment towards restitution in an amount greater than $500.00, and that Osta had never informed him that he was registered with the State as a president, director, or registered agent of sixteen corporations.
Osta was then called to testify. With regards to the sixteen corporations, Osta stated that no business activity was taking place in several of the corporations, and that a few of the businesses had been dissolved. He stated that one of the corporations owned a small lot in Daytona but that all of the corporations were "shell *806 corporations," and he never conducted business in them. Osta testified that at the time he was placed on probation he and his brother owned two restaurants. Finally, Osta admitted that he had not made a payment on his restitution since May of 2002, claiming he did not believe that he owed the State the money since he was allowed to make meager payments or even skip payments for nearly three years before the affidavit of violation was filed.
In closing argument, the State maintained that it had met its burden of proving that Osta had violated the terms of his probation. The State contended that Osta was a wheeler-dealer who put together shell corporations to hide his ability to pay, and that Osta's own testimony revealed his failure to make payments was not the result of his inability to pay, but rather his belief that he did not owe the State any money. The State further argued that if Osta could afford to travel out of state, he could afford to pay his restitution. Osta responded by arguing that the State failed to prove that he had the assets to pay the restitution amount. Upon review the trial court adjudicated Osta guilty of violating his probation, finding by a preponderance of the evidence that he did violate probation in that he could have paid much more towards his restitution than he did, and that the violation was willful and substantial. The trial court terminated Osta's probation, adjudicated him guilty for failing to remit sales tax and grand theft, and sentenced him to three days time served on each count. Additionally, the trial court entered a money judgment for the outstanding restitution balance. This appeal timely followed.
Osta challenges his judgments and sentences claiming that the trial court abused its discretion in finding him guilty of violating his probation because the State failed to present any evidence demonstrating that he had the ability to pay more money towards his restitution than that which he had paid. The State responds that the trial court properly found that Osta had violated his probation by willfully failing to pay his restitution and that Osta failed to carry his burden to establish, by clear and convincing evidence, that he had an inability to pay more restitution. In reply, Osta contends that the State wrongly asserts that he bore the burden of proving his "inability to pay" by clear and convincing evidence, claiming that the law places the burden of proof on the State to bring forth evidence of a probationer's ability to pay in order to demonstrate willfulness. We agree that the burden of proof is on the State, but conclude that the State met that burden and, therefore, affirm.
Section 948.06(5) of the Florida Statutes provides as follows:
948.06. Violation of probation or community control; revocation; modification; continuance; failure to pay restitution or cost of supervision
* * *
(5) In any hearing in which the failure of a probationer or offender in community control to pay restitution or the cost of supervision as provided in s. 948.09, as directed, is established by the state, if the probationer or offender asserts his or her inability to pay restitution or the cost of supervision, it is incumbent upon the probationer or offender to prove by clear and convincing evidence that he or she does not have the present resources available to pay restitution or the cost of supervision despite sufficient bona fide efforts legally to acquire the resources to do so. If the probationer or offender cannot pay restitution or the cost of supervision despite sufficient bona fide efforts, the court shall consider alternate *807 measures of punishment other than imprisonment. Only if alternate measures are not adequate to meet the state's interests in punishment and deterrence may the court imprison a probationer or offender in community control who has demonstrated sufficient bona fide efforts to pay restitution or the cost of supervision.
§ 948.06(5), Fla. Stat. (2002).
Although a plain reading of the statute appears to place the burden of proving ability to pay restitution on the probationer, our courts have held that in order to revoke probation for failure to pay restitution the burden is on the State to prove the "willfulness" of the violation, and in order to prove "willfulness" the State must provide evidence that the probationer has the ability to pay restitution but willfully refuses to do so. See Stephens v. State, 630 So.2d 1090 (Fla.1994)(holding that before person on probation can be imprisoned for failing to make restitution, there must be determination that that person has, or has had, the ability to pay but has willfully refused to do so); Hartzog v. State, 816 So.2d 774 (Fla. 2d DCA 2002)(holding that the State must bring forth evidence of a probationer's ability to pay restitution to demonstrate the willfulness of the probationer's failure to pay, which is a necessary element to prove a violation of the condition requiring payment of restitution).The evidence upon which to predicate a revocation of probation must be sufficient to satisfy the conscience of the court that a condition of probation has been violated. King v. State, 817 So.2d 935 (Fla. 5th DCA 2002).
In order to meet its burden of proving that Osta had the ability but willfully refused to pay his restitution, the State presented records of Osta's extensive travel history while on probation. The requests for travel permits stated that Osta would be accompanied by his girlfriend on nearly all of these trips. Several trips required airfare for two and overnight stays in hotels. The State also presented evidence that Osta was involved in sixteen different corporations acting as either president, registered agent, or director of each. Some money was required to register these corporations with the State of Florida or to renew the registrations. That money could have been used to pay restitution. Since the evidence of record supports a determination that Osta could have used some of the money spent traveling and keeping up his shell corporations to pay restitution, we affirm the trial court's ruling.
AFFIRMED.
SAWAYA, C.J., and PLEUS, J., concur.