DISTRICT COURT OF APPEAL OF THE STATE OF FLORIDA
FOURTH DISTRICT

**CATHERINE SOLDATICH,**
Appellant,

v.

**GREGORY JONES** o/b/o **RAYMOND JOHN JONES,**
Appellee.

No. 4D19-583

[January 22, 2020]

Appeal from the Circuit Court for the Nineteenth Judicial Circuit, Martin County; Steven J. Levin, Judge; L.T. Case No. 18-885GA.

Chet E. Weinbaum, Fort Pierce, for appellant.

Donna L. Eng of Mrachek, Fitzgerald, Rose, Konopka, Thomas & Weiss, P.A., Stuart, for appellee.

GERBER, J.

A caregiver appeals from the circuit court's final order entering an injunction against her for protection against exploitation of a vulnerable adult. She argues that the circuit court's written order contains findings which do not conform with the circuit court's oral pronouncements. We agree with the caregiver's argument. Thus, we reverse in part and remand for entry of a written order conforming with the oral pronouncements.

## *Procedural History*

The caregiver had been employed to care for a vulnerable adult. Approximately one year into the caregiver's service, the vulnerable adult's family filed a petition for injunction against exploitation of a vulnerable adult per section 825.1035, Florida Statutes (2018). The petition alleged the caregiver had exploited the vulnerable adult by various means.

After reviewing the family's petition, the circuit court, per section 825.1035(5), entered an ex parte temporary injunction against the caregiver, and ordered that the caregiver be served with notice to attend a full hearing on the petition.

At the full hearing held per section 825.1035(8), the caregiver denied the family's allegations, said she had not had contact with the vulnerable adult since the entry of the temporary injunction, and would not have further contact with the vulnerable adult.

The circuit court then proposed to enter an order granting the family's petition for injunction, but also indicate in the order that the order was by agreement without the caregiver admitting any of the family's allegations:

> [CIRCUIT COURT]: [I]f you agree to that *what I would do is issue this injunction and I would put on there that it's by agreement - - it's important the words I put in here, by agreement without admitting any facts or admitting any wrongdoing at all*. Bottom line is we don't we go through a protracted lengthy hearing where accusations are made and [the family] calls witnesses and they say things that basically angers everybody and gets everybody more and more upset, because who knows in life what causes things. I think the sole purpose here, as [the family has requested] here, if I understood correctly, wants you not to have contact with [the vulnerable adult]. You don't seem to be arguing that. . . . *I can go ahead, if you wanted in this matter and put in here that the petition is granted, but I'll put in big letters on the bottom, I'll show it to you when I do it, not admitting any facts*. . . . [T]*herefore if anybody looks at this you're not admitting that you did anything wrong*. You're not saying you did anything wrong. Bottom line if [the family doesn't] want you to have contact with [the vulnerable adult] you won't have contact with him, you'll move on and do something else in life. That's what it comes down to. Is that agreeable to you, ma'am?
>
> . . . .
>
> [CAREGIVER]: I'll read [the order].

(emphasis added).

The circuit court then began filling out an eight-page form order entitled "INJUNCTION FOR PROTECTION AGAINST EXPLOITATION OF A VULNERABLE ADULT." The circuit court asked the parties a few questions seeking basic biographical information about the vulnerable adult to include in the form order, but otherwise took no testimony regarding the family's allegations against the caregiver.

2

After the circuit court filled out the form order, but without giving the order to the caregiver to review, the following discussion occurred:

> [CIRCUIT COURT]: *Here's the way I wrote it up in here. . . . I'm going to issue the injunction by agreement . . .* [*without*] *a hearing* [*and*] *<u>without admitting the allegations</u>.* [*The caregiver*] *is stipulating, that's you, ma'am, to the entry of this Order, but is <u>specifically denying all allegations and admitting no wrongdoing</u>.* [*The caregiver*] *agrees to the terms of this Order, but <u>denies all allegations</u>* and believes that if [the family] doesn't want [the caregiver] to have contact with [the vulnerable adult] she was . . . caring for she agrees to have no contact. *<u>That's what it comes down to. And that's . . . the bottom line</u>.* . . . In addition, I put on there that . . . you'll have no contact with [the vulnerable adult]. Shall not directly or indirectly contact him. Shall not contact, have a third party contact him or [send] any message to him unless otherwise provided. [The caregiver] shall not go within a thousand feet of the home . . . Correct, ma'am?
>
> [CAREGIVER]: Yes, sir.
>
> . . . .
>
> [CIRCUIT COURT]: *And I put on here entered this day on top without admitting liability and responsibility. So if anybody ever looks at it*[*,*] *it just says you agreed to stay away.* That's what it comes down to, and end this matter. Is that acceptable, ma'am?
>
> . . . .
>
> [CAREGIVER]: Will that affect my [certified nursing assistant] license?
>
> [CIRCUIT COURT]: I don't know. . . . [T]hat's why I tried to make it as specific as I could down here. ["][The caregiver is] stipulating to the entry of this Order,["] and I'll underline ["]*<u>specifically denying all allegations and admitting no wrongdoing</u>*.["] And I'll put that in there.
>
> [CAREGIVER]: Okay.

(emphases added).

3

The circuit court signed the order and, per section 825.1035(10)(b), had the court deputy serve copies of the order on the caregiver and the family. The hearing then ended.

Per the circuit court's oral pronouncement, the order contained two handwritten notations (underlining in original):

- On the first page, next to the order's title of "INJUNCTION FOR PROTECTION AGAINST EXPLOITATION OF A VULNERABLE ADULT," the circuit court handwrote and underlined, "<u>By agreement without hearing and without admitting to allegations</u>."

- At the bottom of the first page, in the section entitled "Findings," the circuit court handwrote, "[The caregiver] is stipulating to the entry of this order but is <u>specifically</u> <u>denying</u> <u>all</u> <u>allegations</u> <u>and admitting no wrongdoing</u>. [The caregiver] agrees to the terms of this order but DENIES ALL allegations but believes if [the vulnerable adult's family] doesn't want her to have contact with [the vulnerable adult] she was caring for, she agrees to have no contact."

However, the circuit court apparently overlooked that, contrary to its oral pronouncements, the order's second page, where the "Findings" section continued, contained form findings per section 825.1035(8)(a)1.:

> After hearing the testimony of each party present and of any witnesses, or upon consent of Respondent, the Court finds, based on the specific facts of this case:
>
> a. The Vulnerable Adult is the victim of exploitation or that the Vulnerable Adult is in imminent danger of becoming a victim of exploitation.
>
> b. There is a likelihood of irreparable harm and nonavailability of an adequate remedy at law.
>
> c. The threatened injury to the Vulnerable Adult outweighs possible harm to the Respondent.
>
> d. Where the injunction freezes assets of the Respondent, the court finds probable cause that exploitation has occurred, the freeze only affects the proceeds of such exploitation, and there is a substantial likelihood that such assets will be ordered to be returned to the Vulnerable Adult.

e. The relief provides for the Vulnerable Adult's physical or financial safety.

After the circuit court issued the form order, the caregiver, who had been representing herself, did not file a motion to correct judgment per Florida Rule of Civil Procedure 1.530(g) ("A motion to alter or amend the judgment shall be served not later than 15 days after entry of the judgment . . . ."). Instead, the caregiver hired an attorney, who filed this appeal.

## *This Appeal*

The caregiver argues that the circuit court's written order must be reversed because it contains findings which do not conform with the circuit court's oral pronouncements.

In response, the family argues the caregiver waived any argument regarding the written order because the caregiver: (1) accepted receipt of the written order at the hearing without objection; (2) invited the error by agreeing to the final injunction; and (3) did not timely file a motion to correct judgment per rule 1.530(g).

We agree with the caregiver's argument that the circuit court's written order must be reversed. It is a "well-established principle that a trial court's oral pronouncement controls over its written order." *Cancino v. Cancino*, 273 So. 3d 122, 127 (Fla. 3d DCA 2019); *see also Glick v. Glick,* 874 So. 2d 1238, 1241 (Fla. 4th DCA 2004) ("A trial court's oral pronouncement must control over a later written order."); *Drumwright v. State*, 572 So. 2d 1029, 1031 (Fla. 5th DCA 1991) ("It is axiomatic that oral pronouncements control over clerical errors.").

Here, the hearing transcript clearly indicates that the circuit court orally stated numerous times that it was entering a final injunction order without any admissions against the caregiver and without conducting an evidentiary hearing.

However, the written order also contained form findings against the caregiver, based on either "hearing the testimony of each party present and of any witnesses, or upon consent of [the caregiver]." Yet an evidentiary hearing did not occur, and the caregiver did not consent to those findings. Thus, the circuit court erred in entering the written order without having first deleted the order's form findings.

Lacking merit are the family's first and second arguments that the caregiver waived her objection to the written order because she accepted

receipt of the written order at the hearing without objection, or invited the error by agreeing to the final injunction. Nothing in the transcript indicates that the caregiver affirmatively agreed to the written order's form findings, or that the caregiver had the opportunity to read the full written order before the circuit court ended the hearing.

As for the family's third argument, we recognize that the caregiver did not file a motion to correct judgment per Florida Rule of Civil Procedure 1.530(g). However, we consider the situation here to amount to fundamental error, because the circuit court could not have entered the written order's form findings without "hearing the testimony of each party present and of any witnesses, or upon consent of [the caregiver]." Again, neither of those events occurred. *Cf. Narvaez v. State*, 674 So. 2d 868, 869 (Fla. 2d DCA 1996) ("A written order of revocation must conform to the oral pronouncement at the hearing. Here, the written order lists several violations that were not addressed at the revocation hearing. Consequently, we reverse and remand with instructions to strike the reference to the conditions that the trial court failed to announce from the written revocation order.") (internal citation omitted).

Based on the foregoing, we reverse the circuit court's final injunction order in part, and remand for the circuit court to amend the order by striking the form portion of the "Findings" section quoted above, which was not included in the circuit court's oral pronouncement and not consented to by the caregiver.

*Reversed in part and remanded for amendment of final injunction order.*[1]

DAMOORGIAN and KLINGENSMITH, JJ., concur.

*         *         *

---

[1] While we appreciate the circuit court's novel attempt to resolve this case expeditiously upon the caregiver's expressed willingness to avoid future contact with the vulnerable adult, we caution our circuit court colleagues that attempting to resolve cases such as this by entry of "agreed orders" granting the petitioner's requested relief, but without making the findings listed in section 825.1035(8)(a)1., may be ill-advised. Section 825.1035's plain language does not contemplate the entry of such "agreed orders." If such "agreed orders" are entered, then we can foresee issues being raised later as to: (1) the enforceability of such orders under section 825.1035(11) against those who deserve punishment for repeated violations, and (2) the collateral effects of such orders against those for whom the allegations ultimately would have proven to be unfounded. Perhaps the better course of action is to follow the statute as drafted.

*Not final until disposition of timely filed motion for rehearing.*